IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT SAUNDERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 24-83 (MN) |
| ) | |
| VITALCARE HEALTH STRATEGIES, ) | |
| LLC, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Robert Saunders, Georgetown, Delaware – *Pro Se* Plaintiff

February 6, 2025
Wilmington, Delaware

*Maryellen Noreika* (signature)

**NOREIKA, U.S. DISTRICT JUDGE:**

On January 22, 2024, Plaintiff Robert Saunders, of Georgetown, Delaware, filed this civil action. (D.I. 2). Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 5). The Court proceeds to review and screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(b).

**I.  BACKGROUND**

The Complaint raises civil rights claims, pursuant to 42 U.S.C. § 1983, against the following Defendants: Vitalcare Health Strategies, LLC; Chardonnay Dialysis, Inc.; Dr. Aweke Aduku-Ezeh; Robert May; Scott Reynolds; Chris Senato; Megan Falgowski; Phillis Bauaheue; and Nicole Anderson.[1] (D.I. 2). These claims arise from allegedly inadequate medical care that Plaintiff received while incarcerated in violation of the Eighth Amendment. (*Id.* at 4-5). Based on these claims, Plaintiff seeks compensatory, punitive, and special damages, as well as pre- and post-judgment interest, appointment of counsel, and any other relief deemed appropriate by the Court. (*Id.* at 6.)

The following facts are taken from the Complaint and assumed to be true for purposes of screening the Complaint. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021). At all times alleged, Plaintiff was in the custody and control of the Delaware Department of Corrections (DDOC) at the James T. Vaughn Correctional Center (JTVCC). (D.I. 2 at 1). Plaintiff was diagnosed with the following medical conditions: chronic kidney disease, requiring dialysis;

---

[1] Defendants Aduku-Ezeh, Falgowski, May, and Senato all are named as Defendants to this action in their official capacities, as employees of the State of Delaware. (D.I. 2 at 1-2). Defendant Reynolds is named in his official capacity as the medical administrator for Defendant Vitalcare, and Defendant Anderson is named in her official capacity as an employee of Defendant Chardonnay Dialysis. (*Id.* at 2). Although not specifically stated, it appears that the Complaint also intends to name Defendant Bauaheue in her official capacity as an employee of either Defendant Chardonnay Dialysis or Defendant Vitalcare. (*See id.* at 2).

1

cardiovascular problems, including atrial fibrillation and a heart flutter; degenerative disc disease; end-stage renal disease; cataracts in both eyes; and seborrheic dermatitis. (*Id.* at 3.) While Plaintiff was at JTVCC, DDOC contracted with Defendant Vitalcare to provide medical services. (*Id.*). In providing care for Plaintiff on unspecified occasions, Defendant Vitalcare ignored the orders of outside specialists in cardiology, dermatology, and, possibly, podiatry. (*Id.*). Additionally, Defendant Vitalcare, and possibly other unspecified defendants, failed to supervise Defendant Chardonnay Dialysis, which allowed Defendant Bauaheue to treat Plaintiff in an incorrect manner on unspecified dates. (*Id.*).

Defendant Bauaheue "const[ant]ly had severe problems inserting needles into [the] fistual [sic] unit in [P]laintiff's left arm," which resulted in "excruciating and constant swelling problems in [Plaintiff's] arm" when he received dialysis. (*Id.* at 4). On or around March 9, 2023, after one such dialysis treatment with Defendant Bauaheue, a vascular surgeon assessed Plaintiff and determined that the issue was not with Plaintiff's arm, but with Defendant Bauaheue's needle insertion technique. (*Id.*). Additionally, on unspecified dates, Defendant Bauaheue was permitted to provided dialysis to six patients at the same time, without the assistance of a technician, even though this violated a hospital requirement. (*Id.*). When Defendant Bauaheue had to use the restroom or attend to other matters, dialysis patients were left unattended. (*Id.*). Plaintiff attempted to notify other unspecified Defendants of the issues with Defendant Bauaheue by way of the grievance process. (*Id.*). While incarcerated, Plaintiff filed over twenty-five grievances regarding medical issues, and his family member also complained to DDOC regarding his medical treatment. (*Id.*). Yet nothing was done and Plaintiff "suffered severe pain over [a] nine[-]month period as [a] result of [D]efendants['] action[s and] inactions." (*Id.*).

On unspecified dates, Defendants Aduku-Ezeh and Reynolds ignored Plaintiff's medical complaints, which he raised by way of the grievance process, and in other manners. (*Id.* at 5). Furthermore, Defendants Aduku-Ezeh, May, Reynolds, Bauaheue, and Anderson knew that Defendant Chardonnay Dialysis was "providing inadequate medical staffing for JTVCC and that as a result[,] it was impossible for the medical staff to mee[t] the standards contained in their own policy manuals." (*Id.*). Unspecified Defendants knew, through grievances and legal complaints, that Plaintiff and others were not receiving adequate care for serious medical conditions from Defendants Vitalcare and Chardonnay Dialysis. (*Id.*). Additionally, Plaintiff met with Defendants Senato and Falgowski on two occasions, the dates of which are unknown, to discuss the issue of dialysis patients receiving non-renal diets, and Defendants Senato and Falgowski promised that the problem would be corrected, but no action was taken. (*Id.*).

## II.     SCREENING OF COMPLAINT

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013) (quotation marks omitted); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020). Rather, a claim is deemed frivolous only where it relies

on an "'indisputably meritless legal theory' or a 'clearly baseless' or 'fantastic or delusional' factual scenario.'" *Id*.

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id*. at 11.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Constr. Corp*., 809 F.3d 780, 787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III. DISCUSSION

First, without a clear and concise statement regarding who specifically is alleged to have done what, when, and to what effect, the Court finds that much of the Complaint does not meet the applicable notice of pleading standard. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Bench Walk Lighting LLC v.*

*LG Innotek Co.*, 530 F. Supp. 3d 468, 488 (D. Del. 2021) (explaining that, to satisfy Rule 8(a)(2), a complaint must state "enough facts to render it plausible that each defendant individually has performed at least one type of" wrongful act rendering that defendant liable for the violations alleged against him or her). Additionally, the Court cannot credit bald assertions and legal conclusions in the absence of supporting factual allegations, *see Iqbal*, 556 U.S. at 679, and a defendant in a civil rights action "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved," *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). For these reasons, the Complaint fails to state claims against most named Defendants.

The only timely[2] and clearly stated factual allegations in the Complaint are that, on or about March 9, 2023, Defendant Bauaheue inserted a needle into Plaintiff's left arm while administering dialysis treatment, which caused serious pain and swelling to Plaintiff's arm, and then an outside vascular surgeon determined that the source of the problem was Defendant Bauaheue's needle insertion technique.[3] (D.I. 2 at 4). Even when liberally construing these allegations and viewing

---

[2] Claims brought under § 1983 are subject to the statute of limitations for personal injury actions in the state in which the suit is brought. *See O'Connor v. City of Newark*, 440 F.3d 125, 126-27 (3d Cir. 2006). In Delaware, absent tolling, the statute of limitations for personal injury claims is two years from the date the cause of action accrued. *See* 10 Del. C. § 8119; *Smith v. Delaware*, 236 F. Supp. 3d 882, 888 (D. Del. 2017) (citations omitted). Accrual of a cause of action under § 1983 begins when a plaintiff "knew or should have known of the injury upon which its action is based." *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998). Absent tolling, claims arising from facts alleged to have occurred between January 22, 2022, and January 22, 2024, will be timely in this case. (*See* D.I. 2).

[3] Although not specifically discussed in the Complaint, the Court notes that Plaintiff filed a grievance regarding his March 2023 dialysis treatment, which alleges that issues with needle insertion, pain, and arm swelling had also occurred during two prior treatments with Defendant Bauaheue. (*See* 2-1 at 2). This grievance was returned to Plaintiff unprocessed. (*See id.*). The returned grievance informed Plaintiff that his concerns had been forwarded to "HSA and Interim medical director" and explained that his grievance had requested too many remedies to be processed. (*Id.*).

5

them in the light most favorable to Plaintiff, the Court cannot plausibly infer that this rises to the level of deliberate indifference required to establish a violation of the Eighth Amendment.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). To set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A prisoner has no right to choose a specific form of medical treatment. *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. Apr. 10, 2010) (citing *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000)). "Mere disagreement as to the proper medical treatment is insufficient" to state a constitutional violation, *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004), and treatment is presumed to be proper, absent evidence that there was a violation in the standard of care, *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017). Even when a standard of care is violated,

---

It appears that Plaintiff appealed this grievance determination (*id.* at 3), but the outcome is unknown, raising a question regarding Plaintiff's exhaustion of administrative remedies in this case, *see* 42 U.S.C. § 1997e(a) (preventing prisoners from filing suit with respect to prison conditions under § 1983 "until such administrative remedies as are available are exhausted"). Although an inmate must exhaust all available administrative remedies at the prison level before bringing suit, *see Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007), an inmate is not required to specially plead or demonstrate exhaustion in his complaint, *see Jones v. Bock*, 549 U.S. 199, 211-17 (2007); *Small v. Camden Cnty.*, 728 F.3d 265, 268 (3d Cir. 2013). Accordingly, a lack of administrative exhaustion is not dispositive at this phase of the case.

Nevertheless, any claim based on Defendants' involvement in the grievance process would be dismissed because inmates do not have a "free-standing constitutional right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991).

allegations of medical malpractice are not sufficient to establish a constitutional violation. *See White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (noting that negligence is not compensable as a constitutional deprivation).

Plaintiff's March 2023 allegations against Defendant Bauaheue cannot give rise to more than a medical malpractice claim, even when liberally construed and viewed in Plaintiff's favor. *See, e.g., Stuart v. Lisiak*, 645 F. App'x 197, 201 (3d Cir. 2016) (finding that a doctor alleged to have improperly performed a hernia surgery, which resulted in a pain to the plaintiff, amounted "only to medical malpractice, which is not actionable under the Eighth Amendment") (citing *Kost v. Kozakiewicz, 1 F.3d 176*, 185 (3d Cir. 1993) ("[M]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978) ("Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim.")). As such, the Complaint fails to state a § 1983 claim against Defendant Bauaheue.

Additionally, Defendants Vitalcare and Chardonnay Dialysis "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability" in the § 1983 context. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 692 (1978)). To hold Defendant Vitalcare or Chardonnay Dialysis responsible, Plaintiff "must provide evidence that there was a relevant [company] policy or custom, and that the policy caused the constitutional violation" alleged by Plaintiff. *Natale*, 318 F.3d at 584. Yet the Complaint alleges no company policy or custom from which deliberate indifference to a serious medical need can be inferred. On the contrary, the Complaint alleges that the actions of Defendant Bauaheue were not in keeping

with the policies and hospital requirements in place at the time. (*See* D.I. 2 at 4-5). As such, the Complaint fails to state § 1983 claims against Defendants Vitalcare and Chardonnay Dialysis.

Finally, to the extent that Plaintiff intends to the sue Delaware State officials, in their official capacities, for monetary damages, Eleventh Amendment sovereign immunity prohibits Plaintiff from seeking such relief. This is the case because § 1983 permits suits only against "persons," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), and "state officials acting in their official capacities are not 'persons' under § 1983," *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir. 1996). A § 1983 "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71. "Absent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant," *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978) (per curiam)), and the State of Delaware has not waived its sovereign immunity under the Eleventh Amendment, *see Jones v. Attorney Gen. of Delaware*, 737 F. App'x 642, 643 (3d Cir. 2018) (per curiam). As such, all claims for damages against Delaware State officials, named in their official capacity, fail as a matter of law. By contrast, "a damage claim under section 1983 alleging civil rights violations may be maintained against [state officials] in [their] individual capacity." *Melo v. Hafer*, 912 F.2d 628, 637 (3d Cir. 1990), aff'd, 502 U.S. 21 (1991).

## IV. CONCLUSION

For the above reasons, the Court will dismiss the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff will be given leave to amend.

An appropriate Order will be entered.